FISHER, Circuit Judge,
dissenting,with whom CHAGARES and HARDIMAN, Circuit Judges, join.
The plurality finds that Jermel Lewis’s substantial rights were affected when he was sentenced to a seven-year mandatory minimum sentence for brandishing a weapon during a crime of violence, despite undisputed and overwhelming testimony that he pointed a gun at many people during a robbery. Though what occurred below was error, in my view, for the reasons explained in Judge Smith’s concurring opinion, the error occurred both at trial and at sentencing.[1] So, upon a review of the uncontroverted evidence presented to the grand and petit juries, I would hold that the error was harmless.
I agree with the plurality that this error is not structural and therefore is reviewed for harmless error or plain error under Rule 52 of the Federal Rules of Criminal Procedure. Because the Government has conceded that Lewis objected at sentencing to his seven-year mandatory minimum sentence, we review for harmlessness.[2] *466 Because in my view Lewis would have received the same sentence had there been no error — that is, had the grand jury been asked to charge brandishing and had that charge been presented to the jury — the error under Alleyne v. United States, — U.S. -, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), is harmless and we should affirm the District Court’s sentence.
Alleyne held that “any fact that increases the mandatory minimum is an ‘element’ that must be submitted to the jury.” Id. at 2155. It followed in the footsteps of Apprendi v. New Jersey, which held that, “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Because Alleyne is an extension of Apprendi, we have held that they are to be implemented similarly. See, e.g., United States v. Reyes, 755 F.3d 210, 212-13 (3d Cir.2014). If an objection to an Alleyne or Apprendi error is made, we review for harmless error.
An error is harmless when it does not affect a defendant’s substantial rights. In the context of combined trial and sentencing error, that is the case when “it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” Neder v. United States, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (internal quotation marks omitted). To determine if it appears beyond a reasonable doubt that the error in Lewis’s case did not contribute to the verdict obtained, we first identify the error and then evaluate what the impact would be on Lewis had the error not occurred.
In identifying the error, the key point is that when Lewis’s indictment, trial, and sentencing took place, the law binding the District Court was Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). Harris dictated that “[bjasing a 2-year increase in the defendant’s minimum sentence on a judicial finding of brandishing does not evade the requirements of the Fifth and Sixth Amendments.... That factor need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt.” Id. at 568, 122 S.Ct. 2406. Thus, in this case, the grand jury properly did not allege brandishing in the indictment. The jury was properly not asked to find brandishing. The judge properly found the brandishing enhancement at sentencing by a preponderance of the evidence. The District Court did not err at the time. Rather, those errors only sprung into being because Lewis’s case was still on direct appeal when Alleyne was decided, overturning the procedures dictated by Harris.
This understanding of the interplay between Lewis’s case and the changing Su *467 preme Court precedent helps to pinpoint the errors with regards to Lewis’s indictment and trial. Alleyne made it improper to have a grand jury indictment omit the brandishing element and made it improper to withhold that element from the petit jury. If both of these events, had taken place, then the District Court would have been correct in sentencing Lewis to the enhanced mandatory minimum. Because the error in part occurred at the indictment stage, we first review the evidence and testimony presented to the grand jury to determine whether it would have included the brandishing element in its indictment. If we determine that it would have, we then ask whether, given the evidence and testimony introduced at trial, the petit jury would have convicted Lewis of the enhanced offense. If so, we ask whether the mandatory minimum sentence imposed on Lewis would have been the same. If the answer to all three questions is “yes,” the errors of which Lewis complains are harmless, for correcting them would not change Lewis’s sentence — that is, would not affect his substantial rights.
This is the essence of the harmless error review and of the substantial rights inquiry in this context: Given the quality and quantum of the evidence presented at the relevant stage, would the outcome for the defendant have been different? At base, this is the same inquiry faced by the Supreme Court in United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), albeit there in the plain error context. Plain error review and harmless error review are nearly identical, with the exceptions that plain error review (1) requires consideration of whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings and (2) shifts the burden of proof to the defendant. See United States v. Vazquez, 271 F.3d 93, 99-100 (3d Cir.2001) (en banc).
In Cotton, a district court at sentencing made a finding of drug quantity neither alleged in the indictment nor found by the jury, consistent with practice at the time. 535 U.S. at 628, 122 S.Ct. 1781. This finding was not challenged in the district court. Id. While the case was pending appeal, the Supreme Court decided Ap-prendi, which made the district court’s quantity finding erroneous. On appeal, the Fourth Circuit reviewed for plain error and found that there was an error that seriously affected the fairness, integrity, or public reputation of judicial proceedings. Id. at 629, 122 S.Ct. 1781. The Supreme Court reversed, holding that because “[t]he evidence that the conspiracy involved at least 50 grams of cocaine base was overwhelming and essentially uncon-troverted,” id. at 633, 122 S.Ct. 1781 (internal quotation marks omitted), the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. “Surely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base,” id., as the drug quantity was referred to in other parts of the indictment.
This formulation — that the fairness and integrity of the proceeding were not affected because the outcome would not have been different — is precisely how we are to examine substantial rights: Whether the outcome would have been different for the defendant. Thus, the Supreme Court has drawn a direct line between the “substantial rights” inquiry and the “fairness/integrity/public reputation” inquiry in criminal cases with these types of Apprendi/Al-leyne errors. The relevant inquiry in Lewis’s case is therefore indistinguishable from the underlying question the Supreme Court had to answer in Cotton: Was there sufficient evidence of the missing element such that the substantive outcome would have been the same?
*468 That equivalence dictates the result here because the evidence that Lewis brandished a firearm was overwhelming and, more than being essentially uncontrovert-ed, was in fact completely uncontroverted. Brian Anderson, a witness at trial who was a. patron at the speakeasy on the night of the robbery, identified Lewis as “a heavier light-skinned guy, [who] had another type of handgun — I think it was black — in his hand.” App. at 876. He stated that this person “stood in the doorway with the gun on everybody,” id., and positively identified Lewis at trial. Alberto Vazquez, another patron at the time of the robbery, identified Lewis at trial as “the general, the leader,” who “had a black 9-millimeter or .45 caliber.... It was a black automatic weapon. He pulled it out of his right side pocket, of the hood pocket.” App. at 968-69. Vazquez further testified that Lewis’s gun was “pointed at [Vazquez] and pointed at several other people.” App. at 970. At one point Lewis “pulled [Vazquez’s] shirt up, [and] put the gun to [his] stomach.” App. at 971. Vazquez identified Lewis as the defendant who robbed him that night.
Lewis presented no evidence to rebut the Government’s showing at trial. The testimony from Anderson and Vazquez clearly demonstrated that Lewis went beyond mere “use” of a firearm and instead brandished it as per the requirements of 18 U.S.C. § 924(c)(4) (defining “brandishing” as “displaying] all or part of the firearm, or otherwise makfing] the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person”). This evidence was undisputed. The grand jury certainly would have found the missing element; indeed, the second count of the indictment (one of the Hobbs Act counts) explicitly charged that Lewis and his co-defendants “point[ed] firearms at the customers and employees, order[ed] them to the floor, and threatened] to shoot them.” App. at 70. And the petit jury heard evidence, described above, that Lewis pointed the gun at people and held it at their bodies. Lewis introduced no contrary evidence. Therefore, these errors would not have changed the outcome at trial and, according to the logic of Cotton, they do not affect Lewis’s substantial rights.
Let there be no mistake: This is not a case where Lewis merely declined to introduce contrary testimony. Although at the time the brandishing element did not need to be found by the jury, Lewis and his counsel certainly knew that it would be considered as a sentencing enhancement by the judge after a verdict was returned. Lewis thus had every incentive to call witnesses who could provide evidence that he had not brandished a gun. He chose not to do so — presumably because there were no such witnesses who could testify on his behalf as to this fact. The fact that he at no point — at trial or at sentencing — introduced contrary evidence is fatal to his contention that the judge’s brandishing finding affected his substantial rights. Therefore, the District Court’s Alleyne error is harmless and I would affirm Lewis’s sentence.
I dissent.

. The plurality bases its ultimate decision on the rationale introduced by an amicus curiae. This result causes me concern because it allows defendants to take the tack most expedient at any point in their appeal, regardless of what was argued earlier. Our jurisprudence dictates that we should be hesitant to consider amici's arguments that were not squarely raised by a party below, absent extraordinary circumstances involving a pure question of law, which are not present here. N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff, 669 F.3d 374, 382-83 n. 2 (3d Cir.2012) (" 'Although an amicus brief can be helpful in elaborating issues properly presented by the parties, it is normally not a method for injecting new issues into an appeal, at least in cases where the parties are competently represented by the parties.’ "); Webb v. City of Phila., 562 F.3d 256, 263-64 (3d Cir.2009) (“We are not presented with a pure question of law here, nor are we faced with exceptional circumstances. We do not reach the merits of Webb's constitutional claims.”). Moreover, an argument can be made that Lewis explicitly waived his ability to counter the Government’s argument that any error was harmless. Far from neglecting to raise the issue, Lewis forcefully disavowed this argument, for instance, by beginning his argument to a three-judge panel of this Court by emphasizing "I’m arguing that harmless error doesn't apply.” See also Lewis Br. at 15 (noting on the first page of the argument section, that “the doctrine of 'harmless error’ has no application”). However, since the Government raised harmless error post-Alleyne, arguably the question of harmless error at sentencing was before us, so I will not couch my opposition on waiver.

. I note that our review for harmless error is precipitated by a major concession by the *466 Government — a concession that appears to have little basis in what actually occurred in the District Court. Lewis, in his first brief, adopted his co-defendant's statement that "[d]efense counsel did not object to a consecutive sentence of seven years’ imprisonment for brandishing a firearm." Brief for Appellant Glorious Shavers at *5, United States v. Shavers, 693 F.3d 363 (3d Cir.2012) (No. 10-2790), 2011 WL 2179274;’ see Brief for Appellant Jermel Lewis at *xi, Lewis, 693 F.3d 363 (No. 10-2931), 2011 WL 2322206 ("Appellant rests upon the arguments presented by co-defendant, Glorious Shavers' brief on this issue....”). Years later, in a supplemental letter brief, the Government conceded that Lewis objected to the brandishing element at sentencing. It noted then that it gave Lewis the considerable benefit of the doubt in doing so. More than giving Lewis the benefit of the doubt, the Government rewrote history. Read in context, Lewis’s comment at sentencing had nothing to do with objecting to the seven-year mandatory minimum. Absent that concession, we would apply plain error review to this case, and the outcome there would be obvious — Lewis would lose.